WILLIAM S. WILLIAMS *v.* GEORGE G. CLEAVER.

Any contract, or consent pursuant to which a tenant enters into, or continues in possession of lands, tenements, or hereditaments under an agreement to pay rent, is a demise. But when he enters into the possession of a farm under an agreement merely to till it on shares, and not

under an agreement to pay rent for it, it will not be a demise, and he will be but a cropper on shares. And when the agreement is not in writing, it will be a question of fact for the jury to decide from the evidence whether it was to pay rent, or otherwise. If, however, after entering into possession under an agreement to pay rent, notwithstanding the landlord retains the possession of the mansion, or any other part of the farm for his own use and occupation, he is expelled or prohibited by the act of the landlord from tilling and carrying it on pursuant to the agreement, against his will and without his consent, it will amount to an eviction for which an action of trespass *quare clausem fregit* will lie, and in which exemplary damages may he recovered, if the circumstances attending it are sufficiently aggravated in their character to warrant or require it.

TRESPASS *quare clausem fregit.* The defendant had rented his home farm, retaining the mansion house upon it for the residence of his family, to the plaintiff for the year commencing the 25th of March 1870, and was to furnish every thing necessary to carry it on, the plaintiff to hire, board and pay all the hands, and to have one-third of all the produce, the other two-thirds to be the defendant's. The plaintiff moved into another house on the farm before the close of the month, and proceeded to prepare the ground for cultivation, and had planted fifteen to twenty bushels of potatoes, and ploughed from forty to fifty acres for corn, and had it in condition and ready for planting by the 5th of May following, when the defendant took offence at a rude remark made by him, and instantly ordered him to leave the farm, and told him he could do no more work on it, and that he should not have another horse or anything else to till it with. The plaintiff then inquired of him, if he meant what he said ; to which he replied that he did, and he wanted him to come up and settle, and that he should settle, to which the plaintiff rejoined that if he had to settle, he would go over to his house, and do so. They then proceeded together to the mansion, where the defendant sat down and drew a due bill from the plaintiff to himself for seventy dollars, for provisions furnished and money advanced to him to pay hands since he had come on the farm, which the plaintiff at once refused to sign. He then drew a receipt in full

and tendering it to the plaintiff, said if he would sign that, he would owe him nothing, which the latter also refused to sign, and they then agreed to refer the matter to arbitrators named and appointed, but one of them declined to serve, and it was never adjusted or settled between them. The plaintiff did no more work on the farm after that time, although he continued to hold the house occupied by him on the premises until the close of the rental year, working elsewhere by the day in the mean while. In a few days after the occurrence just stated, the defendant employed and proceeded with a force of nine men and boys to plant the corn in the ground prepared for it, when they were met and forewarned by the plaintiff against going on any property he had rented, but the defendant told them to go on and pay no attention to him, or to any thing he said, which they did, and planted the crop without any further remonstrance or objection from him; and the defendant from that time proceeded to till and manage the farm the residue of the year himself.

*Harrington*, for the plaintiff. The question would probably be raised on the other side, whether the facts proved constituted either a demise, or an eviction, or a trespass *quare clausem fregit* in law, as both the terms of the letting and the possession of the premises by the plaintiff were unusual and peculiar. But it would be remembered according to the evidence, that the defendant himself had more than once or twice even, denominated it a renting of the farm to the plaintiff, both before and after he had entered into the possession of it and commenced work upon it as a tenant under the terms stipulated; and it had been recognized and decided in this court that any agreement or consent, by virtue of which one person enters into the possession of the lands and tenements of another under a contract to pay rent for the same, was a demise, and would establish the relation of landlord and tenant between them, and such was also the plain language of the statute on the subject. *Bonsall v. McKay*, 1 *Houst.*

520. The facts proved, also established an eviction in contemplation of law; for the plaintiff did not willingly abandon the renting, or renounce his rights as the tenant of its fields, but was constrained by superior force to relinquish the cultivation of them, and to submit to the arbitrary will of the defendant in the matter; and that would also constitute a trespass *quare clausem fregit* on the authority of the case just cited, and on the authority of a still later case decided at the last term of this court. *Morrison v. Mitchell, ante p.* 324. On the authority of that case, his possession was sufficient to sustain the action. The circumstances attending it by which the plaintiff was thrown entirely out of a farm for nearly a year, were certainly of an aggravated character, and the trespass gross, so much so, as clearly to entitle him to exemplary damages. *Bonsall v. McKay,* 1 *Houst.* 520.

*Gray*, for the defendant. According to the evidence, this was a case of such a joint or mixed possession of the farm, or *locus in quo* by the parties to the suit, as would and should defeat the action, for no principle of law is better settled than that the plaintiff must have at the time of the wrong and injury complained of, not only an actual, but an exclusive possession of the *locus* or place in which it was committed, to maintain the action of trespass *quare clausem fregit* for it. But was the plaintiff in this case a tenant, or renter of any portion of the farm, (unless perhaps, it might be of the house merely which he occupied till the close of the year) in the true and proper sense of that term? Or was he not rather under the terms of the agreement as proved, to be regarded as a cropper for the season, and not as a tenant in the legal sense of that term? In the case of *Currey v. Davis,* 1 *Houst.* 598, in which the terms of agreement were almost identically the same as in this case, the court held that it did not constitute a demise or renting in the legal sense of that term, but that the plaintiff was only what was termed a cropper on shares. This, as well as that case, was also clearly distinguishable

from the case of *Bonsall v. McKay*, 1 *Houst.* 520; for that was a case of renting beyond all question of a dwelling house simply, of which the plaintiff was tenant and in the lawful and exclusive possession of it, when he was wrongfully and forcibly evicted from it by the defendant, his landlord; and consequently, if the plaintiff in this case could even be entitled to maintain the action, there was no ground whatever for the 'recovery of punitive or exemplary damages in it.    But even, admitting the plaintiff was the tenant of the farm, and the agreement constituted a demise of it to him under the statute, the facts proved did not amount to, or establish in contemplation of law an eviction of the tenant from the demised premises by the landlord in the case.    To constitute an eviction there must be an actual entry by the landlord on the demised premises and an expulsion of the tenant from them against his will and without his consent.    In this case, however, it clearly appeared from the evidence that before any entry was made by the defendant, which was to plant the crop of corn, the plaintiff had actually assented to and voluntarily complied with the order merely of the defendant, to give up the possession and the tilling of the farm under the agreement.

*Harrington.*    On the point of eviction the counsel on the other side had overlooked the further and very material fact proved, that after the parties had met on the day the defendant gave the plaintiff orders to leave the farm, to settle their mutual accounts, but without accomplishing that purpose, the plaintiff positively forewarned him and the men employed by him as they were entering on the premises to plant the corn, against entering on any land rented by him, and that the defendant then bade them go on, and to pay no attention to the plaintiff, or to any thing he had said, which they accordingly did, and planted the crop against his express objection, and, of course, without his consent; and that was the first unlawful entry which the defendant had made upon the plaintiff's possession of

the premises up to that time. He had also overlooked the importance of the fact proved, that the defendant was to furnish all the horses, as well as all the other stock and implements for carrying on the farm by the terms of the agreement, and when he told him, as he did, on the occasion of their disagreement, that he could not have another horse to carry it on with, it was putting it out of his power to perform the agreement, and he accordingly had no alternative but to submit to his behest. In regard to the case of *Currey v. Davis*, 1 *Houst.* 598, he would remark that it did not appear from the report and the facts submitted in the case, that it was ever called or considered by the parties to the agreement, or either of them, a renting of the premises by the one to the other, or that the cropper resided on the land, or had the tenancy or possession of it, or ever entered upon it, except for the simple purpose of attending to the crops he had agreed to raise on it.

*The Court, Gilpin, C. J., charged the jury.* Our statute provides that any contract, or consent pursuant to which a tenant shall enter into, or continue in possession of lands, tenements, or hereditaments, under an agreement to pay rent shall be a demise. Where no term is expressly limited, a demise shall be construed to be for a year, except of houses and lots usually let for a less time. And no demise, except it be by deed, shall be effectual for a longer term than one year. *Rev. Code* 421. There were other provisions, but which it was unnecessary to refer to on this occasion. If the plaintiff entered into possession of the farm, or such portion of it as was to be tilled and cropped that year for that purpose, under an agreement with the defendant to pay him rent for it, then it was a demise and the legal relation of landlord and tenant existed between the parties from the time he so entered into the possession of it. But if there was no agreement between them than that he was to pay rent to the defendant for the use and occupation, and the right of tilling and cropping such portion of it as he was in possession of for their mutual

benefit, then, although in possession for that purpose merely, it would not be a demise, or a renting of it by him within the meaning and definition of the statute. Either the former, or the latter relation, that is to say, of a cropper merely, must have existed according to the evidence in the case, between the parties from the time he entered into the possession of the premises under the agreement, but as that was entirely verbal, and not in writing, it would be for the jury, and not for the court, to determine from the evidence before them, which of the two relations in point of fact at the time existed between them. What the agreement between them in respect to that question was, therefore, a question of fact to be decided by the jury upon all the proof before them in regard to the matter. Was the agreement between them that the plaintiff was to pay as rent for the premises to the defendant two-thirds of all the produce raised that season upon the premises in question? Or was the agreement that the defendant was to hire the plaintiff upon the terms stipulated, to till and raise and harvest the crops that season upon them, and pay him one-third of the produce in consideration of his work and labor and expenses in doing it?

If the plaintiff went into possession of the premises, or the portions of the farm he was to cultivate and crop that year, notwithstanding the defendant retained the possession of the mansion or any other part of the farm for his own use and occupation, under an agreement to pay to the defendant rent for the year to the amount of two-thirds of the produce, and to carry on the farm and hire, board and pay all the hands, in consideration that the defendant would furnish every thing else required for the purpose, then it was a demise and a renting of so much of the farm to the plaintiff by the defendant, and he had in contemplation of law under and by virtue of that agreement, such an exclusive possession of the *locus in quo* as would enable him to maintain the present action against the defendant, if he was wrongfully deprived of the possession of them, or prevented from performing the agreement on his part,

by the defendant against his will and without his consent; and he would be entitled to recover damages to the full amount of the loss and injury which he had sustained by it. But if he was not in possession as before stated, under an agreement to pay rent to the defendant, but only as a cropper to be paid for his services as such, in one-third of the produce, he would not be entitled to maintain the action, and the verdict of the jury in that case should be in favor of the defendant. If, however, the jury should be of opinion upon the evidence, that the plaintiff was in possession as before mentioned, under an agreement to pay rent to the defendant, and so continued in possession from the last of March until about the fifth day of May 1870, and was then expelled or prohibited by the act of the defendant from proceeding any further to carry on the farm pursuant to the agreement against his will and without his consent, it would amount in law to an eviction of the plaintiff by the defendant from the premises in question, and in that case he would not only be entitled to recover compensation in damages to the full amount of the injury thereby done him, but the jury might go further and allow him exemplary damages, if in their judgment the circumstances which characterized the conduct of the defendant on the occasion were sufficiently aggravated to warrant and require it.

The plaintiff had a verdict for $275.